624 So.2d 476 (1993)
STATE of Louisiana, Appellee,
v.
Christopher GRISSOM, Appellant.
No. 25164-KA.
Court of Appeal of Louisiana, Second Circuit.
September 22, 1993.
*477 William B. King, Shreveport, for appellant.
Paul Carmouche, Dist. Atty., Rebecca Bush, Asst. Dist. Atty., Shreveport, for appellee.
Before MARVIN, C.J., and NORRIS and BROWN, JJ.
BROWN, Judge.
Although initially charged with two counts of attempted first degree murder, defendant, Christopher Jerome Grissom, pled guilty to an amended count of attempted second degree murder. Following a lengthy sentencing hearing, the trial court imposed a 15-year term at hard labor. Defendant employed new counsel who filed a motion to reconsider the sentence. After the presentation of additional testimony concerning defendant's background and the provocation for the crime, the trial court retained the original sentence. On appeal defendant contends that the sentence is excessive and that his prior counsel was ineffective. Finding no merit to defendant's assignments of error, the conviction and sentence are affirmed.

FACTS/PROCEDURAL HISTORY
In February 1991, defendant was home on leave from the Navy. Grissom's last night before reporting back to duty in New Jersey was February 22, 1991. That evening Grissom's girlfriend attended a basketball game between Green Oaks and Southwood High Schools. The game was played at Huntington High School in Shreveport. Grissom did not go to the game but went to the school to pick up his girlfriend.
*478 At the end of the game, Carzell Jackson, Andre Anderson, Darrell Sellers and Lewis Rhodes were walking from the gym towards the parking lot when they saw defendant. At this time, Sellers exchanged words with Grissom, purportedly calling Grissom a "coward." Grissom went to his car and returned with a bag. From the bag, Grissom pulled a semi-automatic weapon, loaded it with a clip and fired at least 13 rounds into the group. Carzell Jackson was hit twice while standing and then was shot four more times while on the ground. Andre Anderson was hit four times. Three other rounds struck two vehicles, one of which was occupied.
Grissom was charged by bill of information with the attempted first degree murders of Jackson and Anderson. On November 5, 1991, pursuant to a plea bargain, the state orally amended count one of the bill of information to charge Grissom with attempted second degree murder of Jackson. The count concerning the attempted murder of Anderson was dismissed. Grissom pled guilty to the amended charge.
A sentencing hearing was conducted in February 1992. Several witnesses testified to Grissom's good character and that Grissom's actions were motivated by fear. On March 6, 1992, the court sentenced Grissom to fifteen years at hard labor. Thereafter, present counsel enrolled on Grissom's behalf and timely filed a motion to reconsider the sentence. Evidence from six additional witnesses was introduced. After careful reconsideration, on July 24, 1992, the trial court maintained the 15-year sentence.

FELONY SENTENCING GUIDELINES/CONSTITUTIONAL EXCESSIVENESS
Defendant claims that the evidence was insufficient to justify the prison term imposed and that the trial judge did not properly weigh the testimony which he asserts showed that he had been the victim of prior violent acts committed by Carzell Jackson and his companions. Defendant further alleges that the evidence proved that the victim's companions, Sellers and Rhodes, were the actual aggressors in the confrontation occurring on February 22, 1991.
At the sentencing hearing, members of the Shreveport Naval Reserve Center testified to defendant's good attitude. They believed that defendant was not violent. However, they knew defendant solely from work at the Reserve Center and were unaware that on the night in question defendant had used an Uzi-type weapon to shoot into a crowd of people.
A number of witnesses from defendant's neighborhood and school testified to his good character and quiet demeanor. Some also professed knowledge of prior incidents of violence against defendant by the victim and his group. There was testimony that the victim and his friends were members of the Rolling 60's gang.
Ellis Young and Michael Clayton testified to the events surrounding the shooting. They indicated that the victim and his companions were the aggressors. Although not actually seeing a weapon, they believed that Sellers and Rhodes were armed. Clayton, however, when questioned by the investigating officer, gave a contradictory statement claiming that he had not been to the game and had no knowledge of the shooting. Young expressed to this same officer that defendant had fled the group and did not need to return.
The victim, Carzell Jackson, testified that he was walking with Anderson. Jackson avowed that he had nothing to do with defendant, who ran past Jackson to a car and then returned. Jackson testified that when Anderson asked, "What's wrong with this fool (Grissom)?", defendant started shooting. Jackson said he was hit six times, twice before he fell and four times after he was lying on the ground. Jackson denied knowing, threatening or saying anything to defendant. Jackson was permanently injured and his ability to walk again is in doubt.
Shreveport Police Detective Don Ashley was in charge of the investigation. Ashley described the bullet holes in the two vehicles. Those bullet holes and the pattern of the ejected casings indicated that the weapon was fired in a sweeping motion. The police recovered 13 fired casings. Ashley identified the weapon, recovered from the backyard of *479 the house where defendant was arrested, as an H & K semi-automatic 9mm machine pistol. Ashley, who had attended the basketball game, heard the gunfire and immediately ran to the scene. He patted down Darrell Sellers and found no weapon. Ashley did not see Lewis Rhodes. Ashley said the first time anyone claimed that Rhodes was carrying a weapon was at the sentencing hearing.
Ashley found defendant later that night at his aunt's house in bed with his girlfriend. When interviewed, defendant denied involvement in or knowledge of the shooting. He also denied having been threatened.
Ashley interviewed Ellis Young, who said that Darrell Sellers called defendant a coward. Defendant, who was piqued, ran to the parking lot and came back carrying a bag from which he pulled an Uzi-type weapon and began shooting. Young told Ashley that defendant did not shoot at the ground but shot directly at the group. This statement to the investigating officer contradicted Young's in-court testimony.
Defendant testified that he shot into the ground when the group advanced towards him in a threatening manner. Defendant's girlfriend, Stephanie Ford, did not testify. She was with defendant at the shooting scene and was in bed with him at the time of his arrest. She told Detective Ashley that Grissom hung out with and was considered a member of the Hoover gang. Defendant denied being a member of any gang. Defendant's mother, however, dated a member of the Hoover gang. The weapon used in the shooting came from a closet in defendant's mother's house. According to defendant, the gun belonged to his mother's boyfriend.
The trial court found that there had been an exchange of words at the basketball game. Defendant responded by getting a semi-automatic weapon, pointing it at people in an indiscriminate manner and initiating a wide spray of gunfire. While children and their parents were exiting the gym, defendant shot the victim, Jackson, twice as he stood and four times after he fell. Defendant shot Anderson four times. A woman who was sitting in her car reported that her vehicle was hit by two bullets. Another vehicle was also struck by a bullet.
The court went on to highlight the testimony of each witness and to summarize letters written by other members of the community. The trial court declared it had read and reread the sentencing guidelines which recommended a sentencing range of 60 to 90 months (5 to 7½ years) under grid cell 1-G.
The trial court concluded that the guidelines' suggested sentencing range was inappropriate under the circumstances of this case because defendant knowingly created a risk of death or great bodily harm to one or more persons and the offense resulted in significant permanent injury and economic loss to the victim and his family. The trial court was bothered by defendant's statement at the guilty plea that he was pleading because "the D.A. wouldn't offer me anything lower." The trial court clearly considered defendant's "youth" (18 at time of offense) and provocation before imposing a sentence of 15 years.
Defendant filed a motion to reconsider. Another hearing was allowed with new counsel. Six new witnesses testified about prior incidents involving threats against defendant by the victim or his companions. The trial court summarized the testimony of these new witnesses and said it was not persuaded to alter its sentencing decision.
The sentencing guidelines are advisory. No sentence shall be declared unlawful, inadequate or excessive solely because the trial judge rejects the suggested term provided by the sentencing guidelines. La.S.G. § 103(J); LSA-C.Cr.P. Art. 894.1; LSA-R.S. 15:328(B); State v. Lowery, 609 So.2d 1125 (La.App. 2d Cir.1992); State v. Perow, 607 So.2d 888 (La.App. 2d Cir.1992).[1]
In State v. Stamper, 615 So.2d 1359, 1364 (La.App. 2d Cir.1993), this court emphasized:

*480 The recommended sentences of the guidelines are just that, recommendations ... The law requires only that a sentencing court consider the guidelines in deciding on an appropriate penalty; however, it may choose to depart from the designated sentencing grid range. If it does, it must justify its decision.
The sentencing court should consider all aggravating and mitigating circumstances listed in the guidelines but is not bound to find that such circumstances in fact exist to justify rejection of the guideline's recommended sentencing range.
This court recognizes the wide discretion of the trial court and requires that a manifest abuse of that discretion be demonstrated before setting aside a sentence. State v. Square, 433 So.2d 104 (La.1983); State v. Norrell, 614 So.2d 755 (La.App. 2d Cir.1993); State v. Madison, 535 So.2d 1024 (La.App. 2d Cir.1988).
In the case sub judice, the trial court delineated in detail its factual findings and reasons for its ultimate sentence. The record does not show a manifest abuse of the trial court's discretion. The trial court was in the best position to evaluate the quality of the testimony. The evidence supports the findings that defendant did not act out of fear and that the victim was not the aggressor. Defendant's plea of guilty, however, dispensed with the state's obligation to prove that the shooting was not in self-defense. At the sentencing hearing the state was not obliged to prove the absence of justification as that was an established fact. It was defendant's responsibility to show, in mitigation, that his criminal conduct was provoked in such a manner as to call for leniency.
We find that the trial court fully considered all aggravating and mitigating information available before passing final sentence and that the facts determined by the trial court were supported by the record. We further find that the reasons given for the sentence were justified based on the evidence. The sentencing range provided by the legislature for the charged offense was up to 50 years. Given the circumstances of this case, the sentence actually imposed is not excessive.

INEFFECTIVE ASSISTANCE OF COUNSEL
The indigent defender office was replaced by Randy Collins as counsel for defendant. After imposition of sentence, William King represented defendant. Defendant argues that Collins was ineffective because at the initial sentencing hearing he failed to call witnesses to testify about prior threats and violence toward defendant made by the victim and his friends. We do not agree.
Normally, an ineffective assistance contention is raised in an application for post-conviction relief. State v. Sullivan, 596 So.2d 177 (La.1992); State v. Wright, 598 So.2d 493 (La.App. 2d Cir.1992). Nevertheless, if the record contains sufficient evidence to resolve the issue, the matter may be considered on direct appeal in the interest of judicial economy. State v. Sullivan, supra. Because the present record provides such a basis, we entertain the complaint.
The right of a defendant in criminal proceedings to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
In order to establish that his trial attorney was ineffective, defendant must first show that the attorney's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. Secondly, defendant must prove that this deficient performance prejudiced his defense. This element requires a showing that the errors were so serious that defendant was deprived of a fair trial. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for defendant to show that the error had some conceivable effect on the outcome of the proceeding. Rather, he must *481 show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial (sentencing hearing) would have been different. State v. Sullivan, supra.
There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland v. Washington, supra; State v. Wry, supra. The defendant bears the burden of proving that certain acts by his counsel were deficient and that this deficiency led to an unreliable outcome. State v. Wry, supra.
The record does not indicate that prior counsel was aware of the additional witnesses who testified at the reconsideration hearing. Second, defendant's argument assumes that the witnesses' testimony would "tend" to establish self-defense and be considered mitigating evidence. It was clear to the trial court at the initial sentencing that defendant was relying on claims of prior threats, fear and self-defense. Thus, the additional witnesses' testimony would have been cumulative. Furthermore, the impact of their testimony at the reconsideration hearing did not result in a change in the sentence and there is no reason to believe that it would have diminished the sentence at the earlier hearing.
For the foregoing reasons, the defendant's claims of ineffective counsel are dismissed.

ERRORS PATENT
Defendant's final assignment requests this court to review the record for errors patent. This request is unnecessary because such a review is automatic in all criminal cases. LSA-C.Cr.P. Art. 920(2); State v. Stamper, supra.
After reviewing the record, we find no errors patent.

CONCLUSION
We find that the trial court correctly departed from the sentencing guidelines when it sentenced defendant to fifteen years at hard labor. Furthermore, the sentence was not constitutionally excessive. Defendant's claim of ineffective counsel is without merit and no errors patent were found.
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] This advisory nature of the guidelines was reaffirmed in a Concurrent Resolution of the Legislature in 1993 (No. 269) which emphasized that the trial judge retains the discretion to reject the suggested sentencing range provided the reasons and factual basis for the sentence imposed are stated.