653 So.2d 174 (1995)
STATE of Louisiana, Plaintiff-Appellee,
v.
George PRATT, Jr., Defendant-Appellant.
No. 26862-KA.
Court of Appeal of Louisiana, Second Circuit.
April 5, 1995.
Rehearing Denied May 4, 1995.
*175 Kidd-Culpepper by Paul Henry Kidd, Monroe, for appellant.
Richard Ieyoub, Atty. Gen., Jerry L. Jones, Dist. Atty., Charles L. Cook, Asst. Dist. Atty., for appellee.
Before MARVIN, C.J., STEWART, J., and PRICE, J. Pro Tem.
MARVIN, Chief Judge.
Contending that his counsel was ineffective, George Pratt appeals his conviction of second degree murder. We affirm.

FACTS
Pratt was indicted for second degree murder of Leo Washington. At trial, Pratt's attorney elicited evidence that Washington and his family were involved in drug trafficking. Washington thought that Pratt had informed the Houston police that Washington's nephews were dealing drugs, causing the nephews' arrest and Washington's loss of two large bags of cocaine. Washington's demand that Pratt pay him $10,000, the asserted value of the lost cocaine, provoked the homicide. The State's response to this defense underlies the error asserted on appeal.
Bobby Wayne Wallace, Valerie Marie Coleman, Bobbie Laws, Bessie Lou Washington, Officer Kerry Black, Mark Latrone Bolden, Patrick Dewayne Walker and Pratt testified. Pratt said that on November 19, 1992, near 6:00 p.m., he stood in a parking lot at a recreational center in Monroe when Washington *176 and some relatives walked up to him, asking if he was going to come up with the $10,000. When Pratt replied he had no money, Washington struck Pratt in the head about four times. Pratt backed up, pulled a gun out of his back pocket, and fired it at Washington, who ran. Pratt followed, firing at Washington as he ran. Pratt followed Washington into one of the nearby homes. Pratt acknowledges he shot once while inside the house, but explained he was not trying to kill Washington and did not know that he had shot him until the next day.
Bobby Wayne Wallace and Valerie Marie Coleman saw Washington and Pratt fighting and saw Pratt pull a gun from his pocket and shoot at Washington. They saw Pratt chase Washington into the home of Bobbie Laws, who was a neighbor of Bessie Lou Washington, the victim's sister. Wallace said Washington started the fight by hitting Pratt, who then fired several shots while chasing Washington. When Washington came out of the house, he told Wallace that Pratt had shot him. Wallace took Washington to the hospital, where he later died.
Bobbie Laws was standing outside her home talking with Bessie Lou Washington, her neighbor. She heard about three shots and saw Washington run into her home. Seeing Pratt with a gun in his hand, she stopped him, asking that he not shoot in the house because her children were there. She heard three shots while Pratt was in the house. When Washington came outside, he said he had been shot and asked her to call 911.
Bessie Lou Washington, who was outside with Bobbie Laws, said she saw Washington running and heard two shots. She said she and Bobbie let Washington into Bobbie's house. As Pratt approached, she grabbed his hand, begging him not to shoot her brother. She said she heard two shots while Pratt was in the house. Washington later came out of the house and told her that Pratt had shot him.
Mark Latrone Bolden and Patrick Dewayne Walker testified that they heard Washington and Pratt talking about money and saw Washington hit Pratt. Neither saw the shooting because they both left when the fight started. Walker heard Washington tell Pratt he was going to get him.
Monroe policeman Kerry Black investigated the shooting. He found an empty casing of a .25 caliber bullet in the bathroom of the Bobbie Laws' home and a live .25 caliber round in the doorway of a bedroom. The parking lot where the fight started was 263 feet from the door of the home where Pratt chased Washington.
The jury found Pratt guilty as charged of second degree murder. After his conviction, Pratt engaged other counsel to represent him, who moved for new trial based upon ineffective assistance of counsel. After this motion was denied, Pratt appealed, seeking a reversal and remand for a new trial.

DISCUSSION
Pratt's sole assignment charges that the trial court erred in denying his motion for new trial. Ineffective assistance of counsel is more properly raised in an application for post-conviction relief in the trial court. When the record is sufficient, we may resolve this issue in the interest of judicial economy. State v. Sullivan, 596 So.2d 177 (La.1992),reversed on other grounds ___ U.S. ___, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); State v. Grissom, 624 So.2d 476 (La.App.2d 1993).
Responding to Pratt's defense that Washington was trafficking in drugs, the State made two references during trial of which Pratt complains on appeal. First, the prosecutor asked Pratt the following questions on cross-examination:
Q The two nephews that got arrested in Houston, you went with them over there didn't you?
A Sir?
Q You went with the two nephews to Houston didn't you?
A Yes sir.
Q You were also going over there to get some drugs weren't you?
A No sir.
Second, the prosecutor made the following comments in his rebuttal to the defendant's closing argument:

*177 The defense has put Leo Washington on trial.... He can't come into this courtroom and ... tell you that George Pratt was the one involved with drugs.
Pratt's trial counsel had argued to the jury in this vein: "Quite candidly perhaps Leo deserved it. Leo Washington, I believe it is clear, was a drug dealer." Pratt contends that these references to his involvement in other crimes were inadmissible pursuant to LCE Art. 404 and State v. Prieur, 277 So.2d 126 (La.1973) and entitled him to a mandatory mistrial pursuant to CCrP Art. 770(2).
CCrP Art. 770 states in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
The State argues that the references were admissible pursuant to LCE Art. 404 which allows evidence of other crimes, acts or wrongs "when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." Other crimes evidence is admissible when intertwined with the charged offense to such an extent that the State could not accurately present its case without reference to the evidence. State v. Brewington, 601 So.2d 656 (La.), on remand, 605 So.2d 4 (La.App.1992).
In such cases, the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving the immediate context of happenings near in time and place. Brewington, supra.
The State also argues that the statement made in rebuttal regarding Pratt's involvement with drugs was permissible because it was a fair inference from the evidence adduced at trial. CCrP Art. 774 limits the scope of argument to evidence admitted and conclusions of fact that the parties may draw therefrom. While the prosecution must base conclusions and deductions in closing argument upon evidence adduced at trial, both the State and defense are entitled to their own conclusions as to what is established by the evidence, and either may press upon the jury any view arising out of the evidence. State v. Kennon, 588 So.2d 1348 (La.App.2d Cir.1991), writ denied.
Pratt's evidence reveals that Pratt was "on drugs" in 1986 or 1987 and was convicted of attempted possession of cocaine in 1989; there was "bad blood" between Washington and Pratt involving the arrest of Washington's nephews on cocaine charges in Houston; and Pratt had gone to Houston with Washington's nephews. Further, Bessie Lou Washington, when questioned about the problem between Washington and Pratt regarding the nephews being arrested, testified: "Leo [Washington] was upset because George [Pratt] used low privileged children..."
Although the prosecutor's response to Pratt's evidence and argument may be assumed to be prohibited, the errors were clearly waived by Pratt's failure to object, move for a mistrial or request an admonition. CCrP Art. 770, Official Revision Comment (b); State v. Williams, 383 So.2d 996 (La. 1979). Pratt asserts that this failure of his attorney constitutes ineffective assistance of counsel and mandates a new trial.
The right of a defendant in criminal proceedings to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry, 591 So.2d 774 (La.App.2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Grissom, supra.
To establish that his attorney was ineffective, the defendant must first show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, supra; Grissom, supra.
*178 The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency as informed by prevailing professional standards demanded for attorneys in criminal cases. Strickland, supra; State v. Moore, 575 So.2d 928 (La.App.2d Cir.1991). The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions and trial strategy, strongly presuming he has exercised reasonable professional judgment. Moore, supra. We assume, but do not find, that trial counsel's apparent strategy was to use the demand of Washington for $10,000 as provocation to negate or reduce the crime of murder to manslaughter.
Second, the defendant must show that this deficient performance prejudiced his defense. This element requires a showing the errors were so serious that the defendant was deprived of a fair trial. Strickland, supra; Grissom, supra. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. Rather, he must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra; Sullivan, supra; Grissom, supra. Pratt's reliance on Nero v. Blackburn, 597 F.2d 991 (5th Cir.1979) is misplaced. That case was decided under the former totality-of-the-circumstances standard before Strickland's two-prong analysis was announced by the U.S. Supreme Court.
However, the record is sufficient for us to determine that counsel's failure to demand a mistrial does not meet the second prong of the Strickland test. The suggestion of Pratt's involvement with drugs was simply a response to Pratt's defense and did not unduly prejudice Pratt.

CONCLUSION
The evidence clearly establishes that Pratt chased Washington into a house, shooting at him several times. Even should we assume the State's response was legally improper, we find no reasonable probability that but for the State's two references to other crimes, the outcome would have been different. Further, even if counsel had moved for a mistrial and it had been granted, there is no reasonable probability that the outcome of a new trial would have been different.
This assignment of error lacks merit. The trial court's denial of Pratt's motion for a new trial was correct and within the trial court's discretion.

DECREE
The judgment of the trial court is
AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, HIGHTOWER and STEWART, JJ. and PRICE, J. Pro Tem.
Rehearing denied.