JjDREW, J.
Defendants Myrick White and Russell W. Atkins appeal their convictions and 10-year hard labor sentences for distribution of cocaine. White and Atkins urge that their convictions were based upon insufficient evidence, particularly inadequate identifications. They allege that their trial counsel did not provide effective assistance in their defense. Defendants also maintain that they were penalized for going to trial and that their sentences were excessive. Finding no merit in the complaints, we affirm the convictions and sentences.

BACKGROUND

In the course of extensive undercover drug operations in Winnsboro by the Louisiana State Police and the Franklin Parish Sheriffs Office, a state trooper went into the targeted area of the town accompanied by a confidential informant. The informant introduced Atkins to the trooper who arranged to purchase one quarter ounce of crack cocaine. Atkins left the immediate area but returned shortly indicating that the drugs would arrive soon. White, who is Atkins’ brother, and a juvenile passenger arrived in a blue Mitsubishi truck. After speaking briefly with Atkins, both White and the juvenile left and quickly returned in the truck. The juvenile gave the crack to the trooper who paid the juvenile who in turn gave the money to White.
Approximately one week later, the defendants confronted the trooper at an intersection in Winnsboro. The blue Mitsubishi occupied by White, Atkins and the juvenile pulled in front of the trooper’s unmarked car and blocked it. Three other men rode in the bed of the truck. Exiting the truck, Atkins approached the trooper and demanded to know why he was buying so much crack around town and whether the trooper was actually a policeman. After a short exchange, Atkins left in the truck.
| .When the undercover operations were completed, the state police and sheriffs department arrested numerous persons, including Atkins and White. The defendants were tried and convicted as charged by a jury.

DISCUSSION

1. The trial court erred in denying defendants a new trial and/or denying defendants an acquittal because of insufficient evidence.
Asserting the state failed to negate any reasonable probability of misidentification and that the trooper’s identification was inadequate, the defendants contend there was insufficient evidence to support the convictions. They particularly maintain that it was error for the trooper to be shown one photograph of each defendant, for him to identity the drug dealers in this transaction. This suggestive procedure, it is maintained by the defendants, did not negate every reasonable probability of misidentification.
To bolster their claim, White and Atkins allege: (1) the light that night was inadequate to identify White and Atkins; (2) the trooper’s degree of attention was inadequate; (3) the trooper’s prior identification of White and Atkins was incorrect; (4) the trooper was inexperienced at the time of the drug buy; (5) any identification by the confidential informant is not admissible; and (6) the trooper’s report had inconsistencies as to the date of the buy, the cost of the drugs and whether the juvenile was arrested.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the *224 light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (1992). In cases involving a defendant’s claim that he was not the person who committed the crime, the | ¡Jackson rationale requires the state to negate any reasonable probability of misidentifícation in order to carry its burden of proof. State v. Brady, 414 So.2d 364 (La.1982); State v. Baker, 28,152 (La.App.2d Cir.5/8/96), 674 So.2d 1108.
In seeking to suppress the identification, the defendant must prove the procedure used was suggestive and that the totality of the circumstances presented a substantial likelihood of misidentifícation. State v. Martin, 595 So.2d 592 (La.1992); State v. West, 561 So.2d 808 (La.App. 2d Cir.), writ denied, 566 So.2d 983 (1990). The U.S. Supreme Court has approved several factors for evaluating whether the reliability of an identification may outweigh the suggestiveness of the procedures employed. See Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); State v. Davis, 27,961 (La.App.2d Cir.4/8/96), 672 So.2d 428. The factors are (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of the victim’s prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Even if suggestiveness is proven by the defendant, it is the likelihood of misidentifícation, and not the mere existence of suggestiveness, which violates due process. State v. Williams, 375 So.2d 364 (La.1979); State v. Davis, supra.
Even if showing a single photograph is indeed suggestive, this alone is not fatal to the state’s case, considering the Martin factors and the totality of the circumstances. Consider the testimony of Trooper Horton, in response to the Assistant District Attorney:
Q: Is there any doubt in your mind that we’re dealing with the same two people in court that were involved in this drug transaction?
A. No doubt.
LThe record indicates that the trooper had ample opportunity to view White and Atkins. The trooper waited with Atkins for the drugs to arrive. The trooper had two opportunities to view White the night of the transaction and spoke face to face with both defendants who were introduced to the trooper by name or nickname. The trooper testified that the area was well hghted. Taking his and Deputy Sheriff Larry Crum’s testimony together, the temporal factor appears to be relatively short between street sale and photo identification, apparently from one to a few days. Further, not only did he see them on the date of the sale, but also when the defendants confronted him on the street days later. The trooper made an in-court identification of the juvenile who was sitting in the courtroom, and further made the above referenced positive in-court identification of White and Atkins as the individuals from whom he purchased drugs. In addition, there was more than ample evidence concerning White and Atkins being the individuals involved in the transaction, without considering any photographic identification evidence.
The totality of the circumstances indicates a high degree of certainty in the identifications. In addition to identifying the defendants, the trooper identified the vehicle which was used in the drug transaction and to block the intersection. That truck was registered to the mother of White and Atkins. Deputy Crum testified that he had seen White and Atkins driving the same truck in Winnsboro. WTiite and Atkins used either their names or nicknames during the transaction itself. Finally, Atkins testified that he remembered seeing the trooper at the house where the drug transaction occurred. The trial court *225 certainly did not err in denying defendants a new trial and/or denying defendants an acquittal because of insufficient evidence.
| ¡j?. The trial court penalized defendants because they elected to go to trial instead of pleading guilty.
The record contains no evidence to support defendants’ assertion that they received a harsher penalty because they went to trial. Defendants attached to their brief and relied upon a transcript of a sentencing hearing of James Kennie. The transcript was not entered into evidence during the trial nor at any subsequent hearing. The transcript was designated but not included, since it was not part of the record. An appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence. Commercial College of Shreveport v. Williams, 28,546 (La.App.2d Cir.8/21/96), 679 So.2d 509, writ denied, 96-2364 (La.12/6/96), 684 So.2d 927. This assignment of error is without merit.

C. The trial court imposed an excessive sentence.

In addition to again complaining that they received severe sentences because they did not plead guilty, defendants attempted to compare their sentences to that given to James Kennie. Further, they urged the trial court failed to consider the mitigating factors of youth and little criminal activity.
The test imposed by the reviewing court in determining the exces-siveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important | ^elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.), writ denied, 521 So.2d 1143 (1988).
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
The trial court explained its sentencing decision in detail: there was an undue risk of them committing another offense if they were not incarcerated; they were facing additional charges; they were in need of correctional treatment; a lesser sentence would deprecate the seriousness of the crime; they were drug dealers; the crime was serious and harmed the community; they involved a juvenile in the crime; they did not act under strong provocation; they should have contemplated the harm that their criminal conduct would cause and they would not likely respond to probationary treatment. The trial court considered the mitigating factors that they were young, had little criminal activity of record *226 and had dependents. However, they were not caring for the dependents. The sentence is one-third of the possible maximum. White admitted to the facts in his pre-sentence; Atkins denied any involvement with criminal activity. Neither made a 1 statement to the trial court prior to sentencing. The trial court adequately complied with La.C.Cr.P. art. 894.1.
As to their argument that the trial court should have given more weight to their youth and lack of criminal record, there is no requirement that specific matters be given any particular weight. State v. Berry, 29,945 (La.App.2d Cir.10/29/97), 702 So.2d 33; State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979. The record makes clear that the court considered these matters prior to imposing sentence. The sentences do not shock the conscience. This assignment of error has no merit.

D. Defendants were denied the effective assistance of counsel.

Because their attorney failed to ask for a mistrial or an admonition to the jury when the law officer witnesses made references to other crimes and when White admitted on cross-examination that he had sold drugs in the past, the defendants allege they were denied effective assistance of counsel. White and Atkins argue that because of this testimony, there is a likelihood that the jury convicted them based on these comments rather than on the evidence presented concerning the drug transaction. In response, the state maintained the defense did not seek mistrials or jury admonitions because its defense strategy was to show the law officers misidentified the defendants in their haste to arrest the targets of the investigation.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La.C.Cr.P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Green, 27,652 (La.App.2d Cir.1/24/96), 666 So.2d 1302, writ denied, 97 0504 (La.10/31/97), 703 So.2d 14. However, when the record is sufficient, we may resolve this issue on direct appeal in the interest of judicial |seconomy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,394 (La.App.2d Cir.9/27/95), 661 So.2d 673.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). State v. Grissom, 624 So.2d 476 (La.App. 2d Cir.1993). To establish that his attorney was ineffective, the defendant first must show that counsel’s performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Strickland, supra. The relevant inquiry is whether counsel’s representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. Strickland, supra; State v. Moore, 575 So.2d 928 (La.App. 2d Cir.1991). The assessment of an attorney’s performance requires his conduct to be evaluated from counsel’s perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel’s judgment, tactical decisions and trial strategy, strongly presuming he has exercised reasonable professional judgment. Moore, supra,
Second, the defendant must show that counsel’s deficient performance prejudiced his defense. This element requires a showing the errors were so seri *227 ous as to deprive the defendant of a fair trial; i.e., a trial whose result is reliable. Strickland, supra, at 2064. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel’s unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra; Grissom, supra; State v. Pratt, 26,862 (La.App.2d Cir.4/5/95), 653 So.2d 174, writ denied, 95-1398 (La.11/3/95), 662 So.2d 9. The state also contends that even if the statements by the officers were impermissible, the proper remedy was an admonishment to the jury and not a mistrial. The state argues that under La.C.Cr.P. art. 770 a mistrial is mandatory only when the judge, district attorney or a court official makes improper comments. The state submits that a police officer testifying does not fall under this article. When improper testimony is elicited, the proper remedy should be an admonition to the jury under La.C.Cr.P. art. 771. We agree.
While the trial court could have admonished the jury on several of the comments had there been defense objections, the record supports the state’s claim that this type of testimony was part of the attorney’s strategy to show that his clients were on a list of targets and that the officers, in their quest for easy arrests, had misidentified his clients. The defense attorney intentionally asked questions which required answers relating that his clients were on a list of targeted drug dealers. The defense attorney asked the deputy sheriff several questions to confirm that Atkins and White were considered drug dealers and that they were on the list of targeted individuals. The strategy did not work with the jury. However, the adverse verdict does not mean defendants’ trial counsel was ineffective or incompetent.
In State v. McKinney, 31,611 (La.App.2d Cir.2/24/99), 728 So.2d 1009, this court noted that if the state deliberately elicited other crimes testimony, it was imputed to the state and would require a mistrial under La.C.Cr.P. art. 770. However, unsolicited or unresponsive testimony would not be imputed to the state. The record does not indicate that the state intentionally solicited other crimes testimony from the officers or the defendants. Any impermissible testimony from the witnesses was not the responsibility of the state and does not warrant a |inmandatory mistrial. We agree with the state’s assertion that, even if statements by the officers were impermissible, the proper remedy was an admonishment to the jury and not a mistrial. The state argued that under La.C.Cr.P. art. 770 a mistrial is mandatory only when the judge, district attorney or a court official makes improper comments. Under these circumstances, the proper remedy would have been an admonition to the jury under La.C.Cr.P. art. 771.
Additionally, the direct legal evidence of guilt was overwhelming, so that there is no evidence of actual prejudice. The identification of the defendants and their direct connexity with the drug transaction was amply proven. Under the appropriate standard of review, it is presumed that the defense attorney was acting properly. Nothing in the record rebuts that presumption. The jury could reasonably find beyond a reasonable doubt that the defendants were guilty of the crime charged.
We have examined the record for error patent and found none.

DECREE

The convictions and sentences of the two defendants are hereby AFFIRMED.