Judgment rendered May 21, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,273-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

CARLOS DEMOND ARY                          Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 385,451

Honorable Donald E. Hathaway, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Chad Ikerd

JAMES E. STEWART, SR.                 Counsel for Appellee
District Attorney

JASON W. WALTMAN
ERIC M. WHITEHEAD
Assistant District Attorneys

* * * * *

Before STONE, MARCOTTE, and ELLENDER, JJ.

**MARCOTTE, J.**

This criminal appeal arises from the First Judicial District Court, Parish of Caddo, the Honorable Donald Hathaway, Jr., presiding. Defendant, Carlos Demond Ary ("Ary"), was convicted of second-degree murder and sentenced to life at hard labor without benefits. He now appeals his conviction and sentence as well as the trial court's ruling that he was competent to stand trial. For the following reasons, we affirm.

## FACTS

On November 18, 2021, Ary was charged by bill of indictment with the second-degree murder of Wendy Akins ("Ms. Akins"), in violation of La. R.S. 14:30.1. The offense occurred on September 25, 2021. Ary pled not guilty.

Ary filed a motion to appoint a sanity commission on November 27, 2023. The motion requested that the commission "examine and report upon the present mental condition of the defendant in accordance with provisions of La. C. Cr. P. Art. 644 and that the issue of the defendant's mental capacity to proceed be determined."

On the same day the motion was filed, the trial court signed an order granting the request and appointing Drs. Joshua D. Sanderson and Jennifer Russell to the commission. The appointment letter asked the doctors to assess Ary's "present mental condition," and "mental condition at the time of the alleged offense."

Dr. Russell, a psychologist, drafted a report finding that Ary could understand the nature of the proceedings, assist in the defense, and distinguish between right and wrong at the time of the offense. Dr. Sanderson, a forensic psychiatrist, also drafted a report with similar findings.

The trial court scheduled a hearing on the sanity commission's findings on March 4, 2024. At the competency hearing, Drs. Sanderson and Russell submitted their reports opining that Ary was competent to stand trial. The trial court stated, verbatim: "Okay. So Dr. Russell and – or Psychologist Dr. Russell and Psychiatrist Dr. Sanderson, both, have said that he is competent to assist in his case. And the prosecution will commence again at this time." Ary's counsel made no objection to the trial court's ruling.

On April 22-24, 2024, a jury trial was held where the following evidence was adduced. Devin Dodson ("Dodson") testified that on September 25, 2021, he was living with his mother, Ms. Akins, and Ary on the third floor of the Knights Inn on Monkhouse Drive in Shreveport, Louisiana. Dodson said that Ary and his mother were not romantically involved, but rather that Ary was subletting a portion of the motel room from her. Dodson also stated that Ary only slept in the room, and to his recollection, never showered there, used the closet, or watched television.

Dodson testified that earlier that day, he was sitting outside of the motel room while Ary was asleep inside. He then observed a man known as "Jimmy" enter the room and leave about a minute later. Dodson did not see that "Jimmy" was carrying anything. A few hours later, Ary awoke and asked Dodson if he had seen anyone enter the room. He informed Ary that "Jimmy" had gone in the room earlier. Dodson then helped Ary search the hotel complex for "Jimmy," to no avail. Approximately 30 minutes to an hour later, Dodson said he heard Ary and his mother arguing outside on the walkway. Apparently Ary believed that Ms. Akins had something to do with his missing firearm. After hearing them argue for less than five

2

minutes, Dodson went outside and saw Ary hit Ms. Akins in the head. Dodson testified that he saw his mother hit the ground and start bleeding. He said he then chased after Ary but was unable to find him. Dodson identified Ary in the courtroom.

Victor Dolmo ("Dolmo"), a homeless man in the area, was on the third floor of the Knights Inn on Monkhouse on September 25, 2021, and witnessed the attack on Ms. Akins. He testified that he saw a black male and a white female arguing. He recognized the black male as Ary because he had seen him in the area multiple times.

Dolmo stated that he had seen the woman several times at the motel, often accompanied by her son. Before the argument became heated, Dolmo heard the woman tell her son to go inside the motel room. He testified that he heard the female say something about "you're getting me fired." Dolmo then observed Ary walk downstairs and then back up with a metal pipe. Once Ary returned to the third story, Dolmo said that Ms. Akins "started walking away" from Ary, and that is when Ary raised the metal pipe and hit her in the head twice from behind. Dolmo saw the female fall to the ground after hitting an air conditioner on the way down. Ary then threw the pipe down and fled the scene. Dolmo testified that the attack occurred approximately five to seven minutes from the start of the argument and when Dodson was sent inside by his mother. Dolmo said he attempted to shield Dodson from seeing the gruesome scene of his mother lying in a pool of blood.

Shreveport Police Department ("SPD") officer Eric Coker ("Off. Coker") happened to be in the parking lot of the Knights Inn at the time of the incident because he had just arrested another individual in an unrelated

3

case.  Off. Coker testified that an individual approached him in the parking lot and said that Ms. Akins was found in a puddle of blood from a head injury.  When Off. Coker arrived at the stairwell, he observed a stream of blood coming down from multiple floors.  Ms. Akins was located on the third floor, lying on her right side in a puddle of blood.  Off. Coker said that the blood had pooled and coagulated around her mouth and face, and it looked like she was struggling to breathe.  Emergency medical services ("EMS") arrived 10 to 15 minutes later.  Once Ms. Akins was removed by EMS, Off. Coker said he began taking pictures of the scene.  He was then informed a metal pipe was believed to be involved in the attack.  Off. Coker located the pipe on the first floor and took pictures.  The pictures taken by Off. Coker of the crime scene and the weapon were admitted into evidence and published to the jury.

On October 1, 2021, Officer Jonathan Varnell ("Off. Varnell"), a crime scene investigator, responded to Ochsner hospital after being advised that Ms. Akins had succumbed to her injuries.  Off. Varnell photographed and took measurements of the injuries to Ms. Akins.

Ronald Debello ("Off. Debello") was a patrol officer for SPD at the time of the incident.  Off. Debello came on duty the day after the incident, September 26, 2021, and was informed of the previous night's events by Off. Coker.  Off. Coker provided Off. Debello with a picture of Ary based on the arrest warrant obtained for attempted second-degree murder.  Off. Debello then started making phone calls and contacting businesses on Monkhouse inquiring about Ary.  On September 28, 2021, Off. Debello received a call from dispatch advising that Ary was seen in a red Dodge

4

traveling to an Exxon gas station on Monkhouse, within eyeshot of the scene of the crime.

After calling for additional units, Off. Debello arrived at the Exxon station and observed Ary inside the store at the cashier's counter. Off. Debello proceeded inside and asked him for his name. Ary confirmed his identity and surrendered. Off. Debello then placed him in handcuffs.

Off. Debello read Ary his *Miranda* rights and took a statement from him. Off. Debello testified that Ary told him that he knew he was in trouble and "was going to jail for a long time for hitting that woman." Ary told Off. Debello that he had an altercation with Ms. Akins because she helped steal a gun from him. Ary also confirmed that during the argument, he went down to his car, retrieved a metal pipe, then went back upstairs and struck her with it multiple times.

Once at the police station, Off. Debello took Ary to meet with Detective Herring ("Det. Herring"). Det. Herring produced a written *Miranda* form that was read aloud to and signed by Ary. Det. Herring then conducted a recorded video interview with Ary, which was played for the jury. Off. Debello characterized Ary as forthcoming and said that his belief that Ms. Akins played a part in his stolen firearm was sincere. Off. Debello identified Ary in court as the suspect from the photo and the person he arrested based on the warrant.

Tyler Sheets, a specialist in forensic investigation of electronics for the Caddo Parish District Attorney's Office, testified that he attempted to gain access to surveillance video of the incident supplied by the motel, but was unable to because he did not have the password to access the system.

5

DNA forensic expert Michelle Jackson ("Ms. Jackson") testified that a sample of blood was taken from the metal pipe and analyzed by her office at the North Louisiana Crime Lab. Ms. Jackson stated that the DNA sample taken from the pipe was consistent with the reference sample taken from Ms. Akins. She said that the probability of error was minuscule.

Expert forensic pathologist Dr. Long Jin ("Dr. Jin") testified that he performed the autopsy of Ms. Akins. Dr. Jin observed "very deep" lacerations to the back of Ms. Akins's head. Based on the location of the injuries, Dr. Jin opined that the lacerations were likely caused by "at least three" strikes to the head. An examination of the skull revealed fractures to multiple sides directly caused by the strikes to the head. Dr. Jin also observed multifocal subdural and subarachnoid hemorrhaging, bleeding across multiple lobes and "depth" spaces of the brain membrane. He classified the death as a homicide and opined that the cause of death was blunt force injury to the head.

The state rested. Following a colloquy, Ary opted not to testify in his own defense, and the defense rested.

A unanimous jury found Ary guilty of second-degree murder. The jury was polled, and the polling slips were placed into the record under seal. On April 30, 2024, Ary filed a motion for post-verdict judgment of acquittal and a motion for a new trial. The trial court denied both. On May 9, 2024, Ary was sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence. The trial court informed him of his appellate and post-conviction relief time constraints. Ary now appeals.

## DISCUSSION

*Insufficient Evidence*

Because Ary's argument claims insufficient evidence in addition to trial court error regarding the competency hearing, we will address sufficiency of the evidence first. *See State v. Hearold*, 603 So. 2d 731, 734 (La. 1992) ("When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence.")

Ary avers that the trial court erred in denying his post-verdict judgment of acquittal because the evidence at trial proved that Ary was guilty of manslaughter rather than second-degree murder. While there was sufficient evidence to show that he struck and killed Akins, Ary claims that the facts showed he acted "in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection."

Ary claims the evidence showed that he was highly upset about his physical safety after his gun was stolen from his room while he was sleeping. Ary argues that because he believed Ms. Akins allowed someone into their room to steal the gun, which was crucial to his personal safety, he had a legitimate reason to be upset. Ary asserts that his gun had been "insurance for self-autonomy in the dangerous world of the Monkhouse area of Shreveport," and when it went missing, he became "vulnerable and exposed."

Ary also argues that because he and Ms. Akins continued to argue after he returned to the third floor with the metal pipe, the pipe was retrieved for intimidation purposes and not to bludgeon her. Ary notes that it was

7

only after Ms. Akins turned to walk away from him, essentially ending the argument and his options for finding his gun, that he "snapped." Ary asserts that while he may have intended to intimidate Ms. Akins, he only formed the intent to harm her when she turned to walk away, and such intent was formed "during the heat of blood and desperation." Ary requests that this court reverse his conviction for second-degree murder, enter a new conviction for manslaughter, and remand for resentencing.

The state contends that it proved the elements of second-degree murder beyond a reasonable doubt. The state notes the "overwhelming evidence" of Ary's guilt, including the fact that: (1) he admitted to walking up behind Ms. Akins and striking her over the head multiple times with a metal pipe; (2) the pipe strikes fractured her skull in multiple places and caused multifocal subdural and subarachnoid hemorrhaging; and (3) Ms. Akins died as a direct result of the blunt force injury to her head.

The state concedes that evidence was introduced at trial that Ary was upset that his handgun was missing and that he believed Ms. Akins was somehow involved in its disappearance. However, the state notes that no evidence, testimonial or otherwise, was presented linking Ms. Akins to the firearm's disappearance. The state also notes that the jury was instructed that manslaughter was an available alternative to acquittal but instead returned a unanimous verdict of guilty of second-degree murder. The state contends that Ary's request for this court to reverse the fact finder's determination and enter a manslaughter verdict would require this court to reweigh the evidence and credibility assessments already made by the trier of fact, which is prohibited on a sufficiency of the evidence review.

8

The state also argues that Ary failed to meet his burden of proving the mitigating elements of manslaughter. The state notes that the essential question is whether an argument regarding a missing firearm is sufficient provocation to deprive the average person of self-control and cool reflection. Since Louisiana appellate courts have long held that "an argument alone does not constitute sufficient provocation to reduce murder to manslaughter," the state argues that Ary has not met his burden. The state further argues that Ary had sufficient "time for cooling" when he walked down multiple flights of stairs, retrieved a pipe, then walked back up multiple flights of stairs. The state requests that this court affirm Ary's conviction and sentence.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Dotie*, 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied*, 09-0310 (La. 11/6/09), 21 So. 3d 297.

The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *Id.* The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95),

9

661 So. 2d 442; *State v. Morehead*, 55,825 (La. App. 2 Cir. 10/23/24), 400 So. 3d 302, *writ denied*, 24-01434 (La. 2/19/25), 400 So. 3d 932. A reviewing court accords great deference to the trier of fact's decision to accept or reject the testimony of a witness in whole or in part. *State v. Jackson*, 53,497 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1156.

Second-degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. *State v. Walker*, 53,975 (La. App. 2 Cir. 6/30/21), 321 So. 3d 1154, *writ denied*, 21-01334 (La. 11/23/21), 328 So. 3d 83. Specific intent to kill can be inferred by the intentional use of a deadly weapon. *State v. Fields*, 42,761 (La. App. 2 Cir. 1/9/08), 973 So. 2d 973, *writ denied*, 08-0469 (La. 9/26/08), 992 So. 2d 983. A pipe heavy enough to fracture the victim's skull is a deadly weapon. *State v. Eaton*, 524 So. 2d 1194 (La. 1988). The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of this determination is guided by the standards of *Jackson v. Virginia*. *Id*.

Regarding Ary's claim that he should have been convicted of the lesser offense of manslaughter, La. R.S. 14:31(A) provides, in pertinent part, that:

> (1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or

heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood had actually cooled, at the time the offense was committed; or

(2) A homicide committed, without any intent to cause death or great bodily harm.

Accordingly, for murder to be reduced to manslaughter, the following must be proved: (1) the homicide was committed "in sudden passion or heat of blood"; (2) that sudden passion or heat of blood was immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection; (3) the defendant's blood did not cool between the provocation and the killing; and (4) an average person's blood would not have cooled between the provocation and the killing. *State v. Kennell*, 54,577 (La. App. 2 Cir. 6/29/22), 342 So. 3d 437; *State v. Efferson*, 52,306 (La. App. 2 Cir. 11/14/18), 259 So. 3d 1153, *writ denied*, 18-2056 (La. 4/15/19), 267 So. 3d 1131.

A defendant who claims provocation, as a means of reducing murder to manslaughter, bears the burden of proving these elements by a preponderance of the evidence; additionally, provocation and the time for cooling are questions for the jury to determine according to the standard of the average or ordinary person. *State v. Leger*, 05-0011 (La. 7/10/06), 936 So. 2d 108, *cert. denied*, 549 U.S. 1221, 127 S. Ct. 1279, 167 L. Ed. 2d 100 (2007). The question for the appellate court on review is whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence. *State v. Burse*, 19-381 (La.

11

App. 5 Cir. 2/12/20), 289 So. 3d 690, *writ denied*, 20-650 (La. 11/24/20), 305 So. 3d 104.

In the present case, the evidence presented at trial established that a man referred to as "Jimmy" walked in the hotel room for "about a minute" and walked out. When Ary woke up a few hours later and determined that his firearm was missing, he enlisted Dodson to help him locate "Jimmy." Approximately half an hour to an hour later, Ary confronted Ms. Akins. For less than five minutes, Ary argued with Ms. Akins and accused her of having something to do with his missing firearm. He then walked down from the third story of the hotel, retrieved a metal pipe from his car, walked back up to the third story, and struck Ms. Akins over the head multiple times from behind. We find that these facts are more than sufficient to show that Ary had specific intent to kill or inflict great bodily harm on Ms. Akins.

As noted above, provocation and the time for cooling are questions for the jury to determine according to the standard of the average or ordinary person. Hearing the testimony and observing the evidence adduced at trial, the jury was able to decide whether: (1) the argument constituted sufficient provocation, and (2) Ary walking down multiple flights of stairs, retrieving a pipe from his car in the parking lot, and walking back up multiple flights of stairs was sufficient "time for cooling."

In our view, an argument concerning possible missing property would not deprive the average, ordinary person of self-control and cool reflection. In other words, this was not a homicide committed in "sudden passion or heat of blood." The decision to walk downstairs, retrieve a deadly weapon, walk back up, and deliver lethal strikes to the back of Ms. Akins's head

12

while she walked away was a cool, intentional act. Manslaughter does not fit with these facts.

We find that Ary failed to meet his burden of proving the mitigating elements of manslaughter and that the state sufficiently proved Ary committed second-degree murder by specifically intending to kill or inflict great bodily harm upon Ms. Akins. Accordingly, the trial court did not err in denying Ary's post-verdict judgment of acquittal. This assignment of error is without merit.

*Competency Determination*

Ary also argues that the trial court erred in failing to issue a ruling finding that he was competent to stand trial. Rather than ruling on his competency, Ary asserts the trial court "merely observed" that the sanity commission doctors found he was competent to assist in his case. Ary's position is that the trial court should have made an independent legal finding of competency rather than ceding that authority to the commission doctors.

Ary claims that because the trial court never made a legal finding of competency and abdicated its responsibility to the commission doctors, all proceedings should have been halted. In support, Ary points to La. C. Cr. P. art. 642, which provides that "when the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution … until the defendant is found to have the mental capacity to proceed."

The state argues that since no contemporaneous objection was made at trial, Ary failed to preserve this issue for appeal. However, even if a timely objection had been made, the state argues that the trial court's determination of competency in this case was identical to the determination recently upheld

by this court in *State v. Harper*, 55,363 (La. App. 2 Cir. 1/10/24), 377 So. 3d 1283, another case where the trial court relied on the reports of the sanity commission doctors.

This court has held that a defendant may waive a full hearing and submit competency based on the uncontroverted reports of the appointed doctors. *State v. Darnell*, 43,048 (La. App. 2 Cir. 8/13/08), 988 So. 2d 870, 876; *State v. Wry*, 591 So. 2d 774 (La. App. 2 Cir. 1991). However, the motion for a sanity commission cannot be withdrawn because that would remove the ultimate decision regarding competency from the trial court. *Darnell, supra*. Indeed, it would be contradictory to simultaneously argue that a defendant may be mentally incompetent to proceed and that he may also knowingly and intelligently waive his right to have the trial court determine his competency to stand trial. *Id.*

Here, the trial court made a judicial determination of competency. Defense counsel was present during the hearing and Ary was present via video. Defense counsel had the opportunity to present evidence of Ary's incompetence but chose not to. The trial court relied upon the sanity commission reports of Dr. Russell and Dr. Sanderson, finding that Ary was competent to assist in his case. Upon this determination, the trial court resumed criminal prosecution in accordance with La. C. Cr. P. art. 648. No objection was made at the time. As was the case in *Harper, supra*, Ary cannot complain on appeal about the trial court's determination that Ary was competent to stand trial based on the sanity commission reports after defense counsel was aware that the trial court was prepared to do so. This assignment of error lacks merit.

*Ineffective Assistance of Counsel*

In the alternative, Ary argues that if this issue is now barred on direct appeal due to his counsel's failure to contemporaneously object, then his counsel was ineffective and his due process rights were fundamentally violated.

The state asserts that Ary failed to demonstrate the failure to object amounted to constitutionally defective assistance of counsel under the two-prong test developed in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The state notes that Ary failed to show that any purported defective performance deprived him of a fair trial. Accordingly, the state's position is that Ary has not offered any proof that the outcome of the trial would have been different based on his counsel's purported errors.

We find unpersuasive Ary's argument regarding ineffective assistance of counsel. A claim of ineffective assistance is generally not urged on appeal. It is usually raised in the trial court through the means of an application for post-conviction relief. However, when the record is sufficient, an appellate court may resolve this issue on direct appeal in the interest of judicial economy. *State v. Cooley*, 51,895 (La. App. 2 Cir. 5/23/18), 247 So. 3d 1159, *writ denied*, 18-1160 (La. 3/6/19), 266 So. 3d 899.

The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by U.S. Constitutional Amendment VI. Under the standard set out in *Strickland v. Washington*, *supra*, and adopted by the Louisiana Supreme Court in *State v. Washington*, 491 So. 2d 1337 (La. 1986), a conviction must be reversed if the petitioner proves (1) that

15

counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced the defendant to the extent that the trial was rendered unfair and the verdict suspect. *State v. Cooley, supra.*

A deficient performance is established by showing that the attorney's actions fell below the standard of reasonableness and competency required for attorneys in criminal cases and is evaluated from the attorney's perspective at the time of the occurrence. *Strickland v. Washington, supra.* A reviewing court must give great deference to the trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. *State v. Nixon*, 51,319 (La. App. 2 Cir. 5/19/17), 222 So. 3d 123, *writ denied*, 17-0966 (La. 4/27/18), 239 So. 3d 836. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. *Strickland v. Washington, supra; State v. Nixon, supra.*

A defendant must show that this deficient performance prejudiced his defense. This element requires showing that the errors were so serious that the defendant was deprived of a fair trial. *Strickland v. Washington, supra.* A defendant must prove actual prejudice before relief will be granted. *State v. Pratt*, 26,862 (La. App. 2 Cir. 4/5/95), 653 So. 2d 174, *writ denied*, 95-1398 (La. 11/3/95), 662 So. 2d 9. It is not sufficient for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. Rather, he must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. *Id.*

16

The record in this case is sufficient for this court to resolve the issue of ineffective assistance of counsel on direct appeal. Ary fails to establish how his counsel's alleged deficient performance prejudiced him. Moreover, his conclusory statement that his "due process rights were fundamentally prejudiced" does not suffice as proof of ineffective assistance of counsel. Indeed, Ary is not able to identify any specific acts or omissions which led to his claim. Accordingly, Ary cannot claim that but for his counsel's purported errors, there is a reasonable probability the outcome of the trial would have been different. This argument lacks merit because it fails to meet the requirements set forth in *Strickland v. Washington, supra*.

## CONCLUSION

For the reasons expressed, Ary's conviction and sentence are affirmed.

**AFFIRMED.**