575 So.2d 928 (1991)
STATE of Louisiana, Appellee,
v.
Floyd James MOORE, Sr., Appellant.
Nos. 22209-KA, 22210-KA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 1991.
*930 C. Calvin Adams, Jr., Tallulah, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, James David Caldwell, Dist. Atty., and Moses Junior Williams, Asst. Dist. Atty., Tallulah, for appellee.
Before NORRIS, HIGHTOWER and VICTORY, JJ.
VICTORY, Judge.
Defendant Floyd James Moore, Sr., convicted by jury of two counts of armed robbery, appeals his sentences of consecutive sixty-year terms at hard labor without benefit of probation, parole, or suspension of sentence. We amend, and as amended, affirm.

FACTS
On May 18, 1988 the defendant approached the Tallulah Pizza Hut and knocked on the door after it had closed that evening. Manager Tim Davis went to the door and told Moore the restaurant was closed. Because Moore continued to knock, Davis opened the door to explain the restaurant was closed. Moore then forced his way inside.
Armed with a .25 caliber pistol, Moore walked the manager over to the cash register. In response to his demands, the manager gave him approximately $453 in cash. Taking the money, defendant ran from the building leaving Davis and his fellow employee, Marie White, unharmed. Interviewed by Tallulah Police Department officers, the victims described the robber as wearing blue jeans, a red Hawaiian shirt and a red cap with golf clubs on it. A search of the area surrounding the Pizza Hut uncovered a red cap with golf clubs on it in the bushes of a nearby building.
Four days later defendant again entered the Pizza Hut just before it closed. Again armed with a small handgun, he demanded all the money in the cash register, advising employee Edie Katzenmeyer he had been in the restaurant "the other night." Katzenmeyer then thought defendant was the robber from four days earlier. Barbara Reese, the manager that night attempted to hide, but defendant soon found her. Pointing the gun at her forehead, he forced her to open the cash register and took approximately $420. As defendant fled, Ms. Reese's boyfriend, Mike Gundy, entered the restaurant. Gundy recognized the robber as Floyd Moore, the defendant, whom he had met through acquaintances. On this occasion, the victims described the robber to police as a black male wearing a hooded green sweatshirt jacket.
On May 25 an anonymous caller suggested to police they question Floyd Moore who was staying in Shirley Gaines' residence at the Starr Lodge Apartments. Officers went to that residence and brought Terri Fleming, Floyd Brown and defendant in for questioning. Defendant denied any involvement with the robberies, but agreed to participate in a lineup. Ms. Reese identified defendant in the lineup.
After questioning Fleming and Brown, officers learned Brown had been with Moore before and after both robberies. Consequently, Brown was able to tell the police what Moore was wearing on both occasions. He also advised them that *931 Moore had told him he had lost his cap during the first robbery.
That same day officers obtained Gaines' written consent to search her residence. The search uncovered a red shirt similar to the one described by victims of the May 18 robbery. After running a background check, law enforcement officers arrested Moore.
Prior to trial Moore twice dismissed his appointed counsel. He dismissed Samuel Thomas for conflict of interest, and Thomas W. Bishop was appointed. Bishop was dismissed when defendant retained Carey Ellis, III, who represented defendant at trial. After trial by jury defendant was convicted on both counts. He was later sentenced on the first count to "not less than sixty years" and on the second count to sixty years at hard labor to run consecutively and without benefit of probation, parole or suspension of sentence.
Appealing through appointed counsel, C. Calvin Adams, Jr., defendant asserts twelve assignments of error. Defendant has not briefed assignments 3-6 and 11. Accordingly, these assignments are deemed abandoned. Rule 2-12.4, URCA; State v. Domingue, 298 So.2d 723 (La.1974); State v. Mims, 524 So.2d 526 (La.App. 2d Cir. 1988), writ denied, 531 So.2d 267 (La.App. 2d Cir.1988).

INEFFECTIVE ASSISTANCE OF COUNSEL
In this assignment of error, defendant claims his trial counsel was ineffective by failing to challenge either for cause or peremptorily a juror whom the assistant district attorney (ADA) had previously represented in an unrelated civil matter, and failing to object to (1) leading questions asked by the prosecution to various witnesses on several occasions, (2) other crimes evidence, (3) introduction of evidence not produced to defendant through pretrial discovery, and (4) inadequate foundation and chain of custody for incriminating physical evidence. We find the alleged errors of trial counsel insufficient to justify reversal.
To succeed on an ineffective assistance of counsel claim, a defendant must meet the two-pronged test espoused in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the Strickland test, a defendant must first show that counsel's performance was deficient by specifically alleging and then proving that counsel made errors so serious that he was not functioning as "counsel" guaranteed by the Sixth Amendment. Second, he must show his counsel's deficient performance prejudiced and deprived him of a fair trial, i.e., one whose result is reliable.
In determining whether counsel was ineffective, the relevant inquiry is whether counsel's representation fell below an objective standard of reasonableness and competency as informed by prevailing professional standards demanded for attorneys in criminal cases. Strickland v. Washington, supra. The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. Mattheson v. King, 751 F.2d 1432 (5th Cir. 1984). A reviewing court must give great deference to trial counsel's judgment, tactical decisions and trial strategy, strongly presuming he has exercised reasonable professional judgment. Ricalday v. Procunier, 736 F.2d 203 (5th Cir.1984); State v. Thompson, 544 So.2d 421 (La.App. 3d Cir. 1989) writ denied, 550 So.2d 626.
Defendant first argues his counsel was ineffective because he failed to challenge a potential juror, Mary Washington, who had previously been represented by the prosecuting attorney. Questioned during voir dire by defense counsel, Ms. Washington stated her prior relationship with the ADA would not affect her ability to fairly judge the facts and law. She also was familiar with defendant's attorney. Defense counsel accepted Ms. Washington as a juror without objection.
A juror's acquaintance with the district attorney does not warrant a challenge for cause if the juror makes it clear her verdict would not be affected. State v. Richmond, 284 So.2d 317 (La.1973); State *932 v. Collins, 546 So.2d 1246 (La.App. 1st Cir.1989), writ denied, 558 So.2d 599.
Apparently defendant's counsel made a tactical decision to keep Ms. Washington. Absent a showing of prejudice, we cannot say and do not find the defense counsel's performance was deficient or ineffective.
Defendant next claims the prosecuting attorney was allowed to lead witnesses on several occasions to his prejudice. Generally, a leading question is forgiven if it is directed to relieve a confused or nervous witness, or to clarify or substantiate a witness' prior response. A question is not leading if it merely directs the witness to the subject matter, or the identity of the evidence. C.E. Art. 611 C. Reversal of a conviction is not mandated unless the leading questions signify clear abuse calculated to prejudice the rights of the accused. State v. Quincy, 363 So.2d 647 (La.1987).
After reviewing the record, we find the leading questions cited by appellate counsel all fall within the ambit of the above exceptions. We further note a defense counsel may refrain from repeatedly making objections to leading questions as a tactical decision. Although the ADA did lead his witnesses in some instances, the defendant's right to a fair trial clearly was not compromised.
In further support of his ineffective assistance claim, defendant next cites his counsel's failure to object to the following testimony by Deputy Sheriff Sammie Byrd:
Q. Okay, now tell us what basic information you had at that particular time when you arrested [the defendant].
A. It's very common for me when I have a suspect in a criminal case that I do not know personally, and do not know his background, to run a criminal history check through the national computer known as NCIC. That was one of the first things that I did after interviewing [defendant], was to check and see if he had a criminal record that would indicate his past history and criminal offenses. I did that.
Q. Okay. And based on your check and also your questioning of these witnesses, is that what led to your probable cause finding or your consideration?
A. Yes, it was.
Defendant points out that his counsel did not object to Byrd's testimony, or request that the jury be admonished. However, we find the counsel's alleged errors neither serious nor deficient.
C.Cr.P. Art. 770 sets forth the type of prejudicial remarks which form mandatory grounds for a mistrial. These grounds include irrelevant, immaterial and potentially prejudicial remarks or comments made directly or indirectly by the judge, the prosecuting attorney or a court official within the hearing of the jury concerning other crimes committed or alleged to have been committed by the defendant.
A police officer is not a "court official" under Art. 770. State v. Harper, 430 So.2d 627 (La.1983); State v. Johnson, 440 So.2d 838 (La.App. 2d Cir.1983). Accordingly, the testimony of Deputy Byrd does not fall under Art. 770, but under Art. 771, which deals with discretionary grounds for mistrial and jury admonitions. Under Art. 771, a defendant must promptly and specifically object to the remarks and request the judge to admonish the jury or the alleged error is deemed waived.
While the officer's remarks may imply the defendant had been involved in other unspecified criminal activity, a mistrial or reversal of a conviction based on a witness' statement is granted only where the remarks or statements are solicited by the prosecuting attorney, are substantially prejudicial, and make it impossible for the defendant to obtain a fair trial. State v. Harper, supra; State v. Smith, 418 So.2d 515 (La.1982). We find no such prejudice.
Though possibly suggestive, the officer's remarks were unsolicited, isolated, unexplained and not deliberate. In State v. Joseph, 437 So.2d 280 (La.1983), the prosecutor asked a witness how he knew the defendant was the same person as the perpetrator of the crime. The witness replied the defendant had robbed him on an *933 earlier occasion, implying the defendant had committed prior crimes. The supreme court concluded the remark was extemporaneous and unsolicited. An admonition was sufficient to ensure a fair trial.
In State v. Perry, 420 So.2d 139 (La. 1982), U.S. cert. denied sub nom. McCray v. New York, 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322, the defendant was convicted of first degree murder. During the course of the trial, a deputy called as a witness made a remark about stolen license plates being on the car the defendant was driving when he was arrested. Finding the officer's statement was unsolicited and unresponsive to the prosecutor's question, the court held the trial judge's admonition was sufficient to cure any alleged prejudice and did not constitute reversible error.
In the instant case, defendant's counsel never objected to the officer's statement. The prosecutor's question was intended to develop facts known by the officer prior to the arrest and was not an attempt to elicit prior crimes evidence. Assuming, arguendo, counsel had objected, the above cases indicate an admonition, rather than a mistrial, would have resulted. Further, defense counsel may have made a tactical decision not to object or request an admonition to avoid further attention to the officer's comment.
The defendant next argues his counsel was ineffective because he allowed the state to introduce items of physical evidence which defense counsel had requested in pretrial discovery but which were not produced by the state.
Discovery motions must be filed within fifteen days after arraignment, unless a different time is provided by law or is fixed by the court at arraignment upon a showing of good cause why fifteen days is inadequate. C.Cr.P. Arts. 521 and 729. The record reflects defendant's arraignment was held on July 15, 1988. Defendant's first attorney (Thomas) filed a motion for discovery on November 7, 1988, far beyond the allotted fifteen days. Subsequent motions were filed by later counsel (Bishop and Ellis).
On April 27, 1989 the prosecution answered some of the questions posed in the motions for discovery and bills of particulars. Supplemental motions were later filed by defendant. The ADA objected to these motions as untimely. After hearing and finding defendant's motions repetitious and untimely, the defendant's motions were denied by the trial court.
At trial, defense counsel objected when the prosecutor attempted to introduce into evidence the initial offense reports, Statement of Rights Forms and Gaines' Consent to Search form, claiming they had not been produced in discovery. In response, the prosecutor stated Bishop had seen the reports, and he had made his file available to Ellis. The trial court overruled the objection since the documents had been produced to Bishop and were available to Ellis.
Defense counsel objected each time the ADA attempted to introduce or referred to the exhibits. Further, given the overwhelming eyewitness evidence, the documentary evidence was merely cumulative. State v. Ray, 423 So.2d 1116 (La.1982). Accordingly, we cannot say defendant did not receive effective assistance on this ground.
Defendant next argues his trial counsel was ineffective by failing to object to certain physical evidence on the grounds of lack of proper foundation or failure to establish the chain of custody. The basic requirement for the introduction of demonstrative evidence is to show that more probable than not, the object is what it purports to be. C.E. Art. 901 A; State v. Jackson, 550 So.2d 680 (La.App. 2d Cir. 1989). This may be proven by either chain of custody or visual identification by showing, for example, the object is what it purports to be by virtue of its distinctive characteristics. C.E. Art. 901 B(4). The lack of positive identification or a defect in chain of custody when the preponderance of evidence standard has been met goes to the weight of the evidence and not to its admissibility. State v. Mills, 505 So.2d 933 (La. App. 2d Cir.1987), writ denied, 508 So.2d 65.
*934 The evidence to which defendant refers is the cap, the red Hawaiian shirt and the .25 caliber pistol. In each case, however, the state's witnesses particularly described the item and connected it with the defendant before the item was introduced.
When first questioned by police, Floyd Brown advised them that defendant twice robbed the Pizza Hut. In fact, the record reflects Brown was at the scene on each occasion. Brown testified that following the first robbery defendant told him he had lost his cap at the scene. Officers found the cap after searching the area surrounding the Pizza Hut and so testified at trial.
Brown dropped defendant off at Gaines' residence following the first robbery and testified defendant was wearing a Hawaiian shirt similar to the one described by victims. Officers recovered the shirt at Gaines' apartment. Officer Hutto, who found the shirt, testified he gave it to Byrd. Byrd identified the shirt at trial as the same one recovered from Gaines' residence.
The weapon used by the robber was described to officers by Tim Davis. Brown identified the gun at trial, stating he recognized it because it did not have a clip since "the kids" played with it. Brown testified Moore stated he had to get rid of the gun because the police were coming.
Captain Ernest Wilmore investigated a disturbance at "Frank's Bar" after the first robbery. A young man whose identity was not known had pulled a gun on one of the customers. Upon searching the street in front of the bar, Wilmore found a .25 caliber pistol without a clip. At trial, Wilmore identified the gun as the one he found and stated he left it on the front seat of his patrol car until the end of his shift. Wilmore then gave the gun to Captain Pinkney who marked and stored it.
The gun was admitted into evidence during the testimony of Byrd, who testified he recovered the gun from the police department after interrogating Brown and other witnesses.
Given the testimony and identifications at trial of these items, any objection defense counsel could have made to the admissibility of these items would have been overruled. Further, no prejudice has been shown. Accordingly, this assignment of error is without merit.

IDENTITY OF CONFIDENTIAL INFORMANT
The defendant next contends the court should have compelled the state to reveal the identity of the anonymous caller.
Disclosure of the identity of a confidential informant is permissible only when the defendant shows exceptional circumstances or when the informer, cooperating with the police, participated in the crime. State v. Oliver, 430 So.2d 650 (La. 1983), U.S. cert. denied, 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688. The defendant has the burden of proving exceptional circumstances and failure to make such showing entitles the state to maintain confidentiality. State v. Sanders, 539 So.2d 114 (La.App. 2d Cir.1989), writ denied 546 So.2d 1212.
Here, the defendant made no showing of exceptional circumstances. Nor does the record reveal the informer participated in the crimes. Accordingly, the trial court did not err in denying disclosure.

DISCLOSURE OF TRIAL WITNESSES
Defendant further claims he was denied a fair trial because the state did not inform him of two witnesses it intended to call at trial. Defendant in brief does not name the two witnesses in question. However, the record implies Gaines was one of the witnesses to which the defendant refers. She was never called to testify. Thus, defendant could not have been prejudiced by not getting her name in advance of trial.
The second witness was apparently Deputy Molly Matthews, a Madison Parish jailer. Matthews was called for the sole purpose of corroborating the testimony of Mike Gundy. Gundy testified prior to Molly Matthews about his contact with defendant while in jail. Gundy had been jailed *935 for issuing worthless checks. He was placed in the same cell block, although not in the same cell, with Moore. Moore approached him with a veil over his face and started beating on the window, calling Matthews and yelling that Gundy was the man who was going to testify against him. Matthews then moved Mike Gundy to a different cell block.
Prior to Matthews' testimony, counsel objected. The trial court overruled defendant's objection, stating defendant was not surprised by her testimony since he already had knowledge Mike Gundy would testify about the same matter.
An accused is not entitled to discovery of the witnesses the state intends to call unless the trial court makes a determination that he will be denied a fair trial without such disclosure. State v. Walters, 408 So.2d 1337 (La.1982).
Since the defendant had prior knowledge that this testimony would be produced at trial, he was neither prejudiced, nor denied a fair trial, because a corroborating witness testified concerning the same matter. Therefore, this assignment of error is without merit.

LIMITATIONS ON IMPEACHMENT EVIDENCE
The defendant contends the limitations placed by the court during his impeachment attempts of Brown denied him his right of effective cross-examination.
During trial, defense counsel asked Brown if he had seen Moore on the day following the second robbery. Brown explained he had seen Moore that day. Defense counsel then sought to impeach Brown by asking him about a prior inconsistent statement made to the police where he apparently said "I haven't been with him since."
Failure to allow inquiry into prior inconsistent statements is harmless error when the jury was informed of the nature and content of the statement and the statement involves only a peripheral issue. State v. Gomez, 365 So.2d 1313 (La.1978); State v. Lewis, 354 So.2d 566 (La.1978).
Brown's prior inconsistent statement related only to whether Brown and Moore had talked following the second robbery and not to whether Moore had committed the crime. Therefore, it related only to a peripheral issue.
Additionally, the statement was read to the jury so the jury had knowledge of its contents. The court's failure to allow further inquiry into the statement, if error, was harmless.

PROSECUTOR'S PREJUDICIAL REMARKS
The defendant contends that the ADA continuously referred to the perpetrator of the crime as "defendant," entitling him to a mistrial under C.Cr.P. Art. 770. The defendant cites us to two places in the record where this occurred.
On the first occasion, the prosecutor, while questioning Marie White asked "When you saw the gun, was it in the defendant's hand?" Ms. White responded "Yes." The prosecutor then apparently attempted to rephrase the question to say "perpetrator's hand?" The witness had stated she did not get a good look at the robber.
On the second occasion, the prosecutor, while examining Barbara Reese, asked "What about the defendant, I mean, the person who robbed you?" The defense counsel objected and moved for a mistrial. The court admonished the jury, refusing to grant a mistrial. Shortly thereafter, Reese identified defendant as the person who robbed her.
A mistrial is a drastic remedy and is mandated only when trial error results in substantial prejudice to the defendant such that it deprives him of a fair trial. State v. Sepulvado, 359 So.2d 137 (La.1978), appeal after remand, 367 So.2d 762. The determination to order a mistrial rests within the sound discretion of the trial judge and will not be disturbed absent a showing that the court abused that discretion. State v. Alexander, 351 So.2d 505 (La.1977).
*936 In the first instance involving Ms. White, the prosecutor quickly rephrased his question to correct his mistake. No objection was made, therefore no ruling by the court was required. In the second instance, involving Ms. Reese, the witness clearly identified defendant as the robber at trial and had previously identified him at the lineup. The trial court did not abuse its discretion in denying the mistrial.

EXCESSIVE SENTENCE
The defendant contends the sentences imposed are excessive. The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. The record must reflect that the trial court observed the criteria set forth in C.Cr.P. Art. 894.1. The trial court need not discuss every aggravating or mitigating circumstance but the record must allow the conclusion that the court considered the statutory guidelines. State v. Smith, 433 So.2d 688 (La.1983). Articulation of the factual basis for the sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record shows an adequate factual basis for the sentence, remand is unnecessary even though a more detailed articulation of the guidelines could have been made. Art. 894.1; State v. Lanclos, 419 So.2d 475 (La. 1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir. 1988), writ denied, 521 So.2d 1143.
The second prong of the test requires us to answer whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. A sentence violates Const. Art. 1, Sec. 20 if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock one's sense of justice. State v. Hogan, 480 So.2d 288 (La.1985). The trial judge has wide discretion when imposing a sentence within the statutory limits. We may not set aside a sentence as excessive absent a finding of manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983); State v. Hudgins, supra.
The record reflects the trial court adequately complied with Art. 894.1. The trial court considered defendant's extensive criminal record in imposing consecutive sixty year sentences. Defendant had previously been convicted twice for burglary and once for grand theft.
Additionally, the court mentioned numerous other felony charges, including two pending charges of attempted escape from the Madison Parish jail and aggravated battery of a police officer.
The trial court observed that defendant's conduct caused serious harm to his victims, that he did not act under provocation, and there were no substantial grounds tending to excuse or justify his conduct.
Considering the defendant's extensive criminal history, the trial court concluded the defendant was in need of correctional treatment in a custodial environment that could best be provided by long-term commitment to a penal institution.
In State v. Donahue, 408 So.2d 1262 (La.1982), a defendant's sentence of 198 years for armed robbery was found commensurate with the severity of the offense and therefore was not excessive where the defendant had a prior felony conviction for simple robbery.
In State v. Bruno, 526 So.2d 1287 (La. App. 3d Cir.1988), the court found a sixty-six year sentence for armed robbery was not excessive because of the defendant's extensive record of serious crimes, even though the trial court failed to consider mitigating factors and the fact that the victim was not hurt.
Here, the defendant's crimes placed the lives of several people in jeopardy. He *937 undoubtedly poses a substantial threat to society. Although the sentences imposed by the trial court are long, under the facts present in this case, we do not find them unduly harsh or excessive, nor do they shock our sense of justice.

ERROR PATENT
Lastly, the defendant asks the court to consider all errors patent in the record. In sentencing the defendant, the trial judge stated:
The court will sentence you to be imprisoned at hard labor for not less than sixty years without benefit of parole, probation, or suspension of sentence. That's on count 53,712, the charge of armed robbery. On docket number 53,713, the charge of armed robbery, the court will sentence you in accord with the statute for sixty years without benefit of parole, probation, or suspension of sentence, consecutive with the sentence under docket number 53,712.
In case 53,712, the trial judge failed to give the defendant a determinate sentence in accordance with C.Cr.P. Art. 879 since no maximum sentence was stated. See State v. Doby, 540 So.2d 1008 (La.App. 2d Cir.1989), writ denied, 544 So.2d 398.
The trial judge apparently intended to sentence the defendant to sixty years at hard labor without benefit of probation, parole, or suspension of sentence on each conviction to be served consecutively. In accordance with C.Cr.P. Art. 882, we correct the sentence in case 53,712 by deleting the words "not less than" sixty years. The sentence in case number 53,712 is amended to be for sixty years at hard labor without benefit of probation, parole, or suspension of sentence. The sentences are to be served consecutively as stated by the trial judge.

DISPOSITION
For reasons stated herein, the defendant's conviction and sentence in 53,713 is affirmed. The conviction in 53,712 is affirmed, but the sentence is amended as stated above.
AMENDED, AND AS AMENDED, AFFIRMED.