862 So.2d 312 (2003)
STATE of Louisiana, Appellee,
v.
Bobby Ray YOUNG, Appellant.
No. 37,673-KA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 2003.
*314 Peter J. Black, Shreveport, for Appellant.
Paul J. Carmouche, District Attorney, Michael W. Powell, J. Thomas Butler, Assistant District Attorney, for Appellee.
Before BROWN, WILLIAMS and TRAYLOR (Pro Tempore), JJ.
WILLIAMS, J.
The defendant, Bobby Ray Young, was charged with possession of a controlled dangerous substance, to-wit: cocaine, a violation of LSA-R.S. 40:967(C). After a jury trial, the defendant was found guilty as charged. The trial court adjudicated the defendant a second felony offender and imposed a sentence of eight years imprisonment *315 at hard labor without the benefit of probation, parole, suspension of sentence or good-time credit, to be served consecutively with any other sentence imposed. Defendant's motion to reconsider sentence was denied. Defendant appeals his conviction and sentence. For the following reasons, we affirm.

FACTS
On September 13, 2000, at approximately 11:15 p.m., Shreveport Police Department Street Level Interdiction Unit (SLIU) Agents, Corporals M.D. Davis, B. Wheeler and J. Silva, responded to a complaint of illegal narcotic sales at a house located on the corner of Havanna and Gardonia Streets. Upon arrival at Havanna Street, the agents observed a white Cadillac parked on the wrong side of the roadway facing west on Gardonia Street. A male on a bicycle was leaning into the Cadillac's driver's side window. As the agents approached the scene, the Cadillac drove westbound on Gardonia Street. The agents pursued the Cadillac, while another unit stopped the individual on the bicycle for questioning. The driver of the Cadillac was later identified as the defendant.
The agents continued to follow the Cadillac and noticed the vehicle did not have working brake lights. As the defendant turned onto Shreveport-Blanchard Highway, Agent Davis, the driver of the police unit, activated the emergency lights and siren to conduct a traffic stop for no brake lights. The defendant traveled approximately 300 yards before he came to a stop in the 4400 block of the highway. When the defendant stopped his vehicle, Agent Davis approached the passenger side of the vehicle and asked the defendant for his driver's license. While Agent Davis waited for the defendant to produce his license, Agent Wheeler noticed a semi-automatic handgun partially concealed between the defendant's right leg and the center console. When the defendant heard Agent Wheeler notify Agent Davis of the handgun, the defendant put the vehicle in drive and fled from the scene.
The agents returned to their vehicle and pursued the defendant. The defendant stopped his vehicle at his mother's residence on David Raines Road. After the defendant exited the vehicle and began running, Agent Davis issued a verbal command for him to stop. The defendant disregarded the command and ran up the stairs onto the porch of the residence. When Agent Wheeler attempted to apprehend the defendant, a struggle ensued. The defendant cursed and threatened the officers. As Agents Davis and Wheeler attempted to handcuff the defendant, Agent Wheeler observed the defendant place his right hand into the breast pocket of his T-shirt. Agent Wheeler later determined that the item was a plastic bag containing contraband. A field test revealed that the plastic bag contained 14 grams of crack cocaine, with a street value of $1400. Subsequently, the agents searched the scene of the initial stop and located the defendant's handgun, which was lying on the roadway in the 4400 block of Shreveport-Blanchard Highway.
After a jury trial, the defendant was found guilty of possession of cocaine. Thereafter, the state filed a habitual offender bill of information charging defendant as a third felony offender. The bill of information reflected that the defendant had two prior convictions of possession of cocaine.
After a hearing, the trial court denied the defendant's motions for new trial and judgment of acquittal. Pursuant to a plea agreement with the state, the defendant admitted that he was a second felony offender and waived his right to a formal hearing. The trial court adjudicated the *316 defendant a second felony offender and sentenced him to serve eight years at hard labor without the benefit of probation, parole, suspension of sentence or good-time credit. Defendant appeals his conviction and sentence.

DISCUSSION
Assignment of Error Number One:
By this assignment of error, the defendant contends the trial court erred in denying his motion for continuance, and thereby, forcing him to proceed to trial unprepared. Defendant urges the trial court should have conducted a hearing to address his complaints with regard to his court-appointed trial counsel. He argues that because of the trial court's adverse ruling on this issue, he was effectively denied the right to present a defense and to due process of law. Finally, the defendant argues that his complaints with regard to his trial counsel are substantiated by the fact that he was required to individually prepare and file certain pre-trial motions with the trial court.[1]
As a general rule, a claim of ineffective assistance of counsel is more properly presented by an application for post-conviction relief than on appeal, since that procedure allows the opportunity for a full evidentiary hearing under LSA-C.Cr.P. art. 930. State v. Jordan, 35,643 (La.App.2d Cir.4/3/02), 813 So.2d 1123; State v. Milligan, 28,660 (La.App.2d Cir. 12/11/96), 685 So.2d 1127, reconsideration denied, 97-0379 (La.6/30/97), 696 So.2d 1005. In the interest of judicial economy, however, the issues may be resolved on direct appeal if the record contains sufficient evidence pertaining to the matter. State v. Jordan, supra.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). In alleging ineffective assistance of counsel, a defendant must satisfy a two-pronged test by showing first, that his attorney's performance was so deficient as to deny him the "counsel" guaranteed by the Sixth Amendment and second, that those errors were so serious as to deprive the accused of a fair trial, i.e., one with a reliable result. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Grissom, 624 So.2d 476 (La.App. 2d Cir.1993). In order to prevail under the Strickland test, the defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. State v. Moore, 575 So.2d 928 (La.App. 2d Cir. 1991). Also, a reviewing court must give great deference to the trial attorney's judgment, tactical decisions and strategy, strongly presuming the accordance of reasonable professional assistance. Strickland, supra; State v. Moore, supra.
In State v. LeBeau, 621 So.2d 26 (La. App. 2d Cir.1993), the defendant complained that his appointed trial counsel had "very few" meetings with him. This Court, citing Murray v. Maggio, 736 F.2d 279 (5th Cir.1984), held that the brevity of consultation time alone cannot support an ineffective assistance of counsel claim. In Murray, defense counsel spoke with his client once for approximately 20 minutes. However, this court noted that in Murray, just as in LeBeau, the case was not complicated and the facts could have been discussed *317 in a short time frame. Additionally, this Court found that LeBeau had not demonstrated how more meetings with his counsel would have benefitted his defense, either through the production of additional evidence or otherwise. Furthermore, this Court stated that the record was adequate to resolve specific complaints of ineffective counsel without requiring defendant to seek post-conviction relief.
In State v. Jordan, supra, this Court applied the two-prong test of Strickland to determine whether defendant's claim of ineffective assistance of counsel had merit. Citing State v. Moore, supra, this Court stated that the assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions and trial strategy, strongly presuming he has exercised reasonable professional judgment. Id.
In State v. Johnson, 34,009 (La.App.2d Cir.1/24/01), 778 So.2d 706, the defendant complained that his attorney had not visited him, had not provided him with copies of discovery documents and had not informed him of his trial strategy. This Court concluded that the record in that case contained sufficient evidence to resolve the issue of ineffective assistance of counsel, and that the trial court was not clearly wrong in finding that defense counsel maintained adequate contact with the defendant.
In the present case, the defendant asserts that his court-appointed counsel did not discuss a trial strategy with him and failed to discuss his case with him at all prior to trial. The defendant strongly urges that since his trial counsel did not refute his allegation of ineffective assistance of counsel on the record, his argument has merit.
The record shows that on the morning of March 5, 2001, the date scheduled for trial, the defendant notified the trial court that he was not ready to proceed during the following colloquy:
THE COURT: Mr. Vergis, are you ready for trial?
MR. VERGIS: Yes, Your Honor.
THE DEFENDANT: Ain't no way we're ready for trial. This man here ain't discussed no trial strategy or nothing. We ain't talked about nothing about no trial. We talked about 15 years.
THE COURT: Have you shared with the defendant discovery that's been provided to you by the State?
MR. VERGIS: Yes, Your Honor.
THE COURT: Mr. Young, unless there's some resolution of the matter this afternoon, I will see you tomorrow morning at 9:00. Next matter.
THE DEFENDANT: I want to object now being forced to go to trial with this attorney.
THE COURT: Your objection is noted for the record. The record will reflect that your objection is noted that you don't think you are ready for trial.
THE DEFENDANT: I don't think.
THE COURT: Mr. Vergis had some witnesses here this morning and I instructed them to be back at 1:30. Those witnessesraise your hand if you're back in this case, State versus Bobby Young. Raise your hand if you're a witness in this matter. I believe it was your mother and two other persons that were here this morning.
THE DEFENDANT: I went in the hospital. He ain't got none of them doctor's at the hospital. I want all them and he ain't did that.
THE COURT: Doctor's at the hospital?
THE DEFENDANT: Yes.

*318 THE COURT: Mr. Vergis, do you know what he is talking about?
THE DEFENDANT: We haven't talked about anything for him to know what I am talking about.
THE COURT: Mr. Young, have a seat. You can visit with Mr. Vergis this afternoon otherwise I'll see you tomorrow morning at 9:00.
The trial court did not have a hearing to address the level and sufficiency of the defense counsel's contact with the defendant prior to trial. Defendant's case proceeded to trial on the following morning.
On this record, we cannot discern whether the defendant's argument is meritous. The record does not reflect that the trial court obtained a response from defense counsel with regard to the nature and extent of his communication with the defendant prior to trial. Consequently, we conclude this issue cannot be resolved on appeal, and defendant must present his claim of ineffective assistance of counsel through an application for post-conviction relief in the trial court. There, the quality of the attorney's assistance can be fully developed and explored. State v. O'Neal, 501 So.2d 920 (La.App. 2d Cir.1987). This assignment of error is without merit.
Assignment of Error Number Two:
By this assignment of error, the defendant contends the trial court erred in failing to consider his pro se pre-trial motions. The defendant argues that although the motions were ruled untimely, the trial court abused its discretion in not addressing the merits of his motion to suppress. He further argues that because of the lack of communication between him and his counsel, coupled with the circumstances in which his motions were filed, the trial court should have held a hearing on the merits of his motions. The state argues that since the defendant's pro se motions were filed approximately four months after the court's deadline, the trial court properly refused to consider the motions.
LSA-C.Cr.P. art. 521 states:
Pretrial motions shall be made or filed within fifteen days after arraignment, unless a different time is provided by law or fixed by the court at arraignment upon a showing of good cause why fifteen days is inadequate.
Upon written motion at any time and a showing of good cause, the court shall allow additional time to file pretrial motions.
LSA-C.Cr.P. art. 703(C) states:
A motion filed under the provisions of this Article must be filed in accordance with Article 521, unless opportunity therefor did not exist or neither the defendant nor his counsel was aware of the existence of the evidence or the ground of the motion, or unless the failure to file the motion was otherwise excusable. The court in its discretion may permit the filing of a motion to suppress at any time before or during the trial.
The record reflects that on March 5, 2001 the court held a lengthy discussion regarding the pro se pretrial motions submitted by the defendant. During those discussions, the state pointed out that at the time the defendant was arraigned on October 31, 2000, the court set a deadline of November 22, 2000 for filing motions. On the date of trial, the state asserted that discovery had been deemed satisfied on December 5, 2002 and at that time there was no mention of any motions, nor did the defendant mention any motions in his February 15, 2001 and February 26, 2001 court appearances.[2]
*319 During the defendant's discussion with the trial court concerning the timeliness of the defendant's pro se motions, the following colloquy took place:
MR. VERGIS: There is a motion to suppress slash quash which was sent to my office. I have no knowledge if it was filed or not filed with the clerk, though.
....
THE COURT: Let me see a copy of the motion that you're referring to, Mr. Vergis. This appears to be a copy of a 23 page form, longhand form motion. You do not have a copy of any 23 page motion, Mr. Powell?
MR. POWELL: No sir, Your Honor. The State has never seen any such motion....
THE COURT: Pass it to defense counsel, please. Mr. Vergis, I can't expect the State to be ready to proceed on a motion that has never been filed with the clerk's office.
MR. VERGIS: I understand that, Your Honor. The defendant did ask me to explain that he hadhe had given the motions to his mother who I believe she stated to him had dropped them off at the clerk's office as well as with the district attorney and myself.
THE COURT: Mr. Young, before the State can proceed to have any evidence filed of record against you, they will have to establish a proper foundation. That's not the same thing as a motion to suppress. But before any evidence is adduced, first of all it would have to be from personal knowledge of the witnesses, and secondly, any items that would be introduced into evidence would have to have proper foundation laid or established for them. I'm not going to require the State to respond to a motion that's not been filed into [sic] the record.
On March 6, 2001, prior to trial, the discussion with regard to the defendant's pro se motions continued. The following colloquy took place between the trial judge and the defendant:
THE DEFENDANT: I said I did everything I could to get it here in time, I did, and my mother brought them here. She dropped them off with the people I trusted and she trusted to give one to you and one to the D.A.
THE COURT: For purposes of completeness of the record, Mr. Vergis, you have a copy of the motion that I looked at yesterday. I presume that the defendant was going to file a copy in the record yesterday. He had ample time to do so, but he did not do it, and I did not bring it upon myself to file it for him. But if you want to file it for purposes of completeness of the record, then you can do so. I will ask that the Clerk or someone make a copy of the handwritten motion and file it in the record of these proceedings, and we'll have a filed mark dated today.
The court denied the motions as untimely. In refusing to continue the defendant's trial, the court stated that it believed the defendant was using the motions as a delay tactic.
The record reflects that the defendant was arraigned on October 31, 2000. The pro se motions were received and filed by the clerk in open court on March 6, 2001, approximately four months after arraignment. Therefore, these motions were untimely on their face.
*320 It is within the court's discretion to allow the untimely filing of a motion to suppress. LSA-C.Cr.P. art. 703(C). Based upon this record, the defendant failed to present a valid excuse for his four-month delay in the filing of his motion to suppress. Thus, we find that the trial court did not abuse its discretion in denying the pro se motions as untimely. This assignment of error is without merit.
Assignment of Error Number Three:
By this assignment of error, the defendant contends the trial court erred in admitting photographic evidence of the defendant at trial that had not been produced in discovery. The defendant argues that the trial court erroneously overruled defense counsel's objection to the introduction of the photographs taken of the defendant on the date of his arrest. He argues that LSA-C.Cr.P. art. 718(3) requires production for inspection of anything taken from the defendant. The defendant alternatively argues that the photographs were discoverable under LSA-C.Cr.P. art. 718(2) as evidence the state intended to use at trial. The defendant contends that the fact that the state did not use the photographs in its case-in-chief, does not mean that the state did not at some point in time intend to use the photographs at trial. Lastly, he argues that he was not afforded an opportunity to submit the photographs to an expert for evaluation of their authenticity.
In response, the state contends the photographs of the defendant were submitted in rebuttal to defense testimony that the police officers could not have taken the crack cocaine from the defendant's shirt pocket because he was not wearing a shirt with a pocket on the day that he was arrested. The state contends the photographs depicted the defendant on the day of his arrest wearing a shirt with a pocket.
The state avers that the photographs neither belonged to the defendant nor were taken from him, and the photographs were not intended to be used at trial. The state argues that the codal articles relied on by the defendant are not applicable, and that the photographs were properly used as rebuttal evidence.
Generally, the discovery rules of the Louisiana Code of Criminal Procedure are intended to eliminate unwarranted prejudice which could arise from surprise testimony. State v. Richardson, 33,272 (La.App.2d Cir.11/1/00), 779 So.2d 771, writ denied, 00-3295 (La.10/26/01), 799 So.2d 1151; State v. Hendricks, 37,045 (La.App.2d Cir.7/16/03), 850 So.2d 1096, 1099.
LSA-C.Cr.P. art. 718 states in pertinent part:
On motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, which are within the possession, custody, or control of the state, and which:
(1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment, or
(2) are intended for use by the state as evidence at the trial, or
(3) were obtained from or belong to the defendant.
Rebuttal evidence is that which is offered to explain, repel, counteract or disprove facts given in evidence by the adverse party. Such evidence may be used to strengthen the state's original case. The determination of whether evidence is rebuttal evidence and hence admissible *321 is an issue which is addressed to the sound discretion of the trial judge. State v. Huizar, 414 So.2d 741 (La.1982); State v. Gantt, 616 So.2d 1300 (La.App. 2d Cir.1993), writ denied, 623 So.2d 1302 (La. 1993), citing, State v. Widenhouse, 582 So.2d 1374 (La.App. 2d Cir.1991), writ denied, 586 So.2d 567 (La.1991), cert. denied, 503 U.S. 910, 112 S.Ct. 1274, 117 L.Ed.2d 500 (1992). A trial court's ruling on the admissibility of rebuttal evidence will not be disturbed except in extreme cases such as when the evidence was kept back deliberately for the purpose of deceiving and obtaining an undue advantage. State v. Williams, 445 So.2d 1171 (La.1984); State v. Hendricks, supra.
In the instant case, the defense presented the testimony of Letrisha Cornelius, a deputy at the Caddo Correctional Center ("CCC"). Cornelius testified that the shirt the defendant was wearing when he arrived at CCC did not have a pocket. In response, the state then presented the photographs of the defendant as rebuttal evidence to refute Deputy Cornelius' testimony. The state assured the court that it had not planned to use the photographs during trial, and they were being used solely as rebuttal evidence.
Since the state did not use the photographs in its case-in-chief and, as it appears from the record, did not intend to use them, Article 718 is not applicable. Furthermore, the state's evidence was offered to repel, and/or disprove facts given in evidence by the defendant. The trial court, in its discretion, allowed the photographs to be entered into evidence. A trial court's ruling on the admissibility of rebuttal evidence will not be disturbed except in extreme cases such as when the evidence was withheld deliberately for the purpose of deceiving and obtaining an undue advantage. State v. Williams, supra; State v. Hendricks, supra. The photographs were clearly rebuttal evidence. The defendant has failed to prove that the state intended to introduce the photographs to deceive the defense or obtain an undue advantage. This assignment of error is without merit.
Assignment of Error Number Four:
By this assignment of error, the defendant contends the trial court erred in imposing an excessive sentence. The defendant argues that the trial court did not properly take into account mitigating factors listed in LSA-C.Cr.P. art. 894.1. The defendant argues that he has demonstrated rehabilitative potential through volunteer work at the jail where he is housed. He further contends that he is in poor health, which is evidenced by the fact that he was hospitalized twice during his incarceration prior to sentencing. He also contends he is the single parent of a minor daughter, who is now in the care of his elderly mother. Defendant argues that his "poverty income level" is also a mitigating circumstance. Additionally, the defendant argues that his crime was not egregious and no one was injured as a result of his offense, except himself. He asserts that his sentence is grossly disproportionate to the seriousness of the offense.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641.
*322 The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, the seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988). There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392; State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
Here, the record shows that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. Although the trial court did not list every aggravating and mitigating circumstance present, the court was cognizant of the defendant's age, health problems, his minor child, his limited education and income potential. State v. Smith, supra; State v. Dunn, supra; State v. Jones, supra; State v. Bradford, supra; State v. Hudgins, supra.
During sentencing the court observed the guidelines of LSA-C.Cr.P. art. 894.1 and concluded that the defendant's criminal history, coupled with the fact that the instant offense was committed while the defendant was on parole, demonstrated "there was an undue risk that during the period of any suspension or probation the defendant would commit another crime."
The record reflects that the defendant's criminal history began in 1969 and he has had five felony convictions in the last 32 years. In light of the defendant's additional drug conviction, the length of the defendant's criminal history and the fact that the defendant was on parole when he committed the instant offense, a sentence of eight years without benefits or good-time credit does not shock the sense of justice. Thus, the trial court did not abuse its discretion in sentencing this defendant as the sentence is not constitutionally excessive. This assignment of error is without merit.
Assignment of Error Number Five:
By this assignment of error, the defendant contends the trial court erred in imposing an illegal sentence. The defendant argues that his sentence is illegal because the trial court denied him the benefit of parole and good-time credit, neither of which is denied under LSA-R.S. 40:967(C), the statute violated, nor LSA-R.S. 15:529.1(A)(1)(a). He argues that the trial court does not have the authority to deny these benefits.
LSA-C.Cr.P. art. 882, states in pertinent part, "[a]n illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review."
LSA-R.S. 15:571.3(C) states, in pertinent part:
Diminution of sentence shall not be allowed an inmate in the custody of the Department of Public Safety and Corrections if:
*323 (1) The inmate has been convicted one or more times under the laws of this state of any one or more of the following crimes:
....
(b) Second degree murder.
....
(m) A violation of R.S. 14:67 which is a felony.
(n) A violation of R.S. 14:95 which is a felony.
(o) A violation of R.S. 14:95.1 which is a felony.
(p) A violation of Chapter 9 of Title 40 of the Louisiana Revised Statutes of 1950 which is a felony.
(q) Any crime of violence as defined by R.S. 14:2(13).
(r) A violation of the Louisiana Controlled Dangerous Substances Law which is a felony; or
(s) Any felony which is defined as an attempt to commit one of the crimes enumerated in Subparagraphs (a) through (r) of this Paragraph, and
(2) The inmate has been sentenced as an habitual offender under the Habitual Offender Law as set forth in R.S. 15:529.1, and
(3) The inmate's last conviction for the purposes of the Habitual Offender Law, was for a crime: (a) Committed during the period beginning September 16,1975 through September 9, 1977, inclusive of both dates, and the sentence of the court specifically denies eligibility for diminution of sentence, or (b) committed on or after September 10, 1977.
LSA-R.S. 15:571.3(D) states:
Diminution of sentence shall not be allowed an inmate in the custody of the Department of Public Safety and Corrections if the instant offense is a second offense crime of violence as defined by R.S. 14:2(13) or was committed during a period of time that the inmate was under the jurisdiction of the department or placed on probation as a juvenile.
LSA-R.S. 15:574.4(A)(1) states, in pertinent part:
Except as provided for in Subsection B of this Section, a person, otherwise eligible for parole, convicted of a first felony offense shall be eligible for parole consideration upon serving one-third of the sentence imposed; upon conviction of a second felony offense, such person shall be eligible for parole consideration upon serving one-half of the sentence imposed. A person convicted of a third or subsequent felony offense shall not be eligible for parole.
In the present case, the defendant was found guilty of possession of cocaine. He was adjudicated a second felony offender and sentenced to serve eight years at hard labor without the benefit of probation, parole, suspension of sentence or good-time credit. Although this Court has the authority under LSA-C.Cr.P. art. 882 to correct an illegal sentence, the sentence imposed is not illegal. The defendant's criminal record includes multiple felony convictions under the Louisiana Controlled Dangerous Substances Act. Under LSA-R.S. 15:574.4(A)(1), the defendant is denied parole eligibility. Furthermore, the defendant has a conviction for attempted second degree murder, he committed the instant offense while he was on parole, the offense was committed after September 10, 1977 and he has been adjudicated a second felony offender. Thus, under LSA-R.S. 15:571.3, the defendant is not eligible for diminution of sentence or good-time. The defendant's sentence is valid. This assignment of error is without merit.
*324 We have examined the record for error patent and found none.

CONCLUSION
For the foregoing reasons, the defendant's conviction for possession of a controlled dangerous substance, to wit, cocaine, his habitual offender adjudication and his sentence are affirmed.
CONVICTION AFFIRMED; ADJUDICATION AS A HABITUAL OFFENDER AND SENTENCE AFFIRMED.
NOTES
[1] Defendant filed the following motions pro se: "Motion to Quash/Suppress", "Motion for Discovery", "Bill of Particulars and Motion `to produce evidence most favorable to the defense'."
[2] The minutes of court do not reflect there were any filings or court appearances in the defendant's case on these dates. Furthermore, the record reflects that the responses to defendant's motions for discovery, as well as the state's own motion for discovery, were filed in the record on March 2, 2001, three days prior to the March 5, 2001 original court date.